**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

_____

NETTIE GRIFFIN,

        Plaintiff,

vs.                                             Case No. 2:15-cv-00780-WJ-KRS

NATHAN KINNISON,

        Defendant.

**MEMORANDUM OPINION AND ORDER**
**GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
**AS TO COUNTS I AND II BASED ON ABSOLUTE AND QUALIFIED IMMUNITY**

THIS MATTER comes before the Court upon a Motion for Summary Judgment on the Basis of Qualified Immunity and other grounds, filed on May 15, 2017 by Defendant Nathan Kinnison (**Doc. 51**). Having reviewed the parties' pleadings and the applicable law, the Court finds that Defendant's motion is well-taken and is therefore **GRANTED**.

## BACKGROUND

Plaintiff was arrested and charged with the distribution of her son's prescription opiates in Roosevelt County, New Mexico. Plaintiff filed this case under 42 U.S.C. § 1983, alleging that her Fourth Amendment rights were violated by the Defendant, Officer Nathan Kinnison, because he omitted from his grand jury testimony and his arrest warrant affidavit that an unsearched third party was present at the controlled buy. Plaintiff also alleges that Defendant did not notify the prosecuting attorney about the failure to search the third party. Evidence of the controlled buy was apparently suppressed, and a year later the district attorney dismissed the case.

Plaintiff filed a complaint asserting claims for Malicious Prosecution (Count 1) and Unreasonable Seizure (Count 2). Defendant moved for summary judgment and asserted absolute and qualified immunity.

## LEGAL STANDARD

Defendants have asserted the defense of qualified immunity, which shields government officials from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *Romero v. Story*, 672 F.3d 880 (10th Cir. 2012).

When a defendant moves for summary judgment on the basis of qualified immunity, the plaintiff bears a heavy two-fold burden. *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001). The plaintiff must put forward evidence showing (1) that the defendant violated plaintiff's constitutional rights, and (2) the right at issue was clearly established at the time of the violation. *Id*. If the plaintiff fails to establish either part of the two-part inquiry, the court must grant the defendant qualified immunity. *Id.*

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). However, "[t]o meet the heavy, two-part burden necessary to overcome a qualified-immunity defense, plaintiffs must allege facts sufficient to show a constitutional violation, and those facts must find support from admissible evidence in the record. [The Court] construe[s] the facts in the light most favorable to the plaintiff as the non-movant. But [the Court] need not make unreasonable inferences or adopt one party's version of the facts if the record doesn't support it." *Harte v. Bd. of Commissioners of Cty. of Johnson, Kansas*, 864 F.3d 1154, 1173–74 (10th Cir. 2017), *cert. dismissed sub nom. Bd. of Cty. Comm'rs of Johnson Cty., Kansas v. Harte*, 138 S. Ct. 576, 199 L.

Ed. 2d 452 (2018) (internal citations and quotations omitted). *See also Hollander v. Sandoz Pharmaceuticals Corp.*, 289 F.3d 1193, 1214 (10th Cir. 2002); *White v. Pauly*, 137 S. Ct. 548, 550 (2017).

## UNDISPUTED FACTS[1]

Defendant was a Deputy Sheriff for the Roosevelt County Sheriff's Department. On May 28, 2010, Defendant had a confidential informant, Michael Encinias (the "CI"), arrange two controlled buys from Plaintiff. The CI signed a contract with the Region V task force and worked with Defendant and other agencies for about six weeks prior to the alleged controlled buys involving Plaintiff. Thus, the CI's credibility was established before the investigation of Plaintiff, through drug purchases or supplying information.

As part of his agreement, the CI received compensation for providing information or conducting controlled buys. He was compensated for at least three buys prior to those with Plaintiff, and received approximately $1,700 for his work. Defendant testified at the grand jury that the confidential informant "has provided information that has led to numerous felony level narcotics arrests as well as other arrests not related to the narcotics."

A.    Controlled Buys.

The CI initially told Defendant that Plaintiff was selling prescription drugs, and that she would obtain more drugs when her son refilled his oxycodone prescription at the end of the

---

[1] The facts set forth in this section are undisputed unless otherwise noted. Also, references to supporting exhibits are included in the briefs and for ease of reading, are omitted here. The Court struck Plaintiff's response because she failed to comply with local rules. *See* **Doc. 64**. Plaintiff refiled her response and lettered her additional facts. Although Defendant refiled his reply, he failed to specifically controvert each additional fact in Plaintiff's response as required by local rule. D.N.M.LR-Civ. 56.1(b) ("Each fact must be lettered, must refer with particularity to those portions of the record upon which the movant relies, and must state the letter of the non-movant's fact. All material facts set forth in the Response will be deemed undisputed unless specifically controverted."). Therefore, unless these additional facts are clearly disputed by Defendant, or are otherwise unsupported by the record, the Court will deem Plaintiff's additional facts as admitted.

month.[2]  Another confidential informant also provided the same information—that Plaintiff was selling prescription drugs.  Another Deputy, Mark Morrison, worked with Defendant on both buys with Plaintiff.

Prior to the first purchase in May 28, 2010, the Officers met with the CI near grain silos in Portales, New Mexico. At the meeting, the CI informed Defendant that Plaintiff's son was refilling a prescription and that the drugs were available for purchase.  At the silo area, the CI was given fifty dollars by the officers, which had been photocopied.

The CI was a passenger in a vehicle driven by his girlfriend.  The CI and the CI's vehicle were searched.  However, the girlfriend was not searched.  On prior occasions, the girlfriend was present, but did not accompany the CI to the location of the buys.  The girlfriend apparently drove the CI to the first buy because his driver's license was suspended.

The CI arranged to do the buy at the CI's residence.  When they travelled to the buy location, the CI was always within sight of the Officers.  The CI was instructed not to go into the residence.

Officers Kinnison and Morrison positioned their vehicle about one or two houses away. Plaintiff pulled up a few minutes later and parked in front of the residence where the CI was waiting. The CI walked to the passenger's side of the vehicle. Plaintiff's son, Jordan, exited

---

[2] Plaintiff objected that a number of Defendant's undisputed facts are supported by inadmissible hearsay of the confidential informant in Defendant's deposition or arrest affidavit.  Generally, hearsay in deposition testimony is not admissible.  *Starr v. Pearle Vision Inc.*, 54 F.3d 1548, 1555 (10th Cir. 1995).  If the fact is included herein, the Court overruled Plaintiff's objection because either (1) Defendant had personal knowledge, or (2) the statement is not hearsay, because it is not given for the truth of the matter asserted.

These statements by the CI do not go to the truth of the matter asserted.  Rather, they go to whether there was probable cause, and whether an objectively reasonable officer would have concluded there was probable cause. *Cortez v. McCauley*, 478 F.3d 1108, 1118, n.10 (10th Cir. 2007) (In determining whether officer had probable cause in qualified immunity analysis, Tenth Circuit concluded that "the statement is not being presented for the truth of the matter asserted therein; the issue is *whether the officers were justified in relying upon it* alone.") (emphasis added); *see also United States v. Harris*, 735 F.3d 1187, 1192 (10th Cir. 2013) (whether affidavit for warrant contained probable cause may be determined by considering hearsay); *United States v. Mathis*, 357 F.3d 1200, 1205 (10th Cir. 2004) (multiple layers of hearsay from anonymous sources may form basis for finding of probable cause); *Illinois v. Gates,* 462 U.S. 213, 233, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) (hearsay may be considered as part of the totality of the circumstances in making a probable cause determination.).

Plaintiff's vehicle, and had a conversation with the CI, but they did not exchange anything. The son got back in the driver's seat and the CI got into the back seat of Plaintiff's vehicle on the passenger's side. The CI was in the vehicle for a brief period of time.

After the buy, the CI walked to an alleyway off the residence, where he met with the Officers. The Officers received oxycodone pills from the CI. The CI said they were purchased from Plaintiff. The CI also informed the Officers that Plaintiff would be at her house later if they wanted to get more pills.

The CI also informed the Officers that Plaintiff was on her way to the Water Department to pay her water bill. Officers Kinnison and Morrison went immediately to the Water Department. As Officers Kinnison and Morrison were pulling into the Water Department, Plaintiff's vehicle was pulling out. Plaintiff asserts that her son and nephew went with her to the Water Department.

At the Water Department, the Officers made contact with the clerks. They were informed that the last customer was Plaintiff and that her account had been paid. They were also informed that the son had made the payment.

The Officers received the money paid on the last transaction. The bills used to pay Plaintiff's water bill matched the money which had been earlier photocopied and provided to the CI for the controlled buy.

Based on the information received from the CI that Plaintiff would be at her home later if he wanted additional pills, a second buy was arranged. A second pre-buy meeting was set up with the CI at a cemetery in Portales. At the second pre-buy meeting, the same procedure was followed. The CI and the vehicle were searched, but the girlfriend was not searched. The CI was provided $90.00 for the second buy. The CI then proceeded to Plaintiff's house. The Officers

followed, never losing sight of the CI's vehicle. The CI exited his vehicle and went to Plaintiff's home.

The CI left the house and then drove to an arranged location to provide the pills to the Officers. The CI's vehicle was always within the Officer's sight. The CI provided Officer Kinnison with the pills which were the same as the initial purchase, and informed the Officers that Plaintiff had sold him the pills.

B.     Legal Process.

Following the second controlled buy, Officer Kinnison prepared a search warrant which was reviewed by deputy district attorney Kirk Chavez and approved by a judge. During the search of Plaintiff's house, Officers seized the packaging from the pill bottle, which was prescribed to her son. Officers found a receipt in Defendant's bedroom for Oxycodone, indicating that a prescription for 200 pills was filled on May 28, 2010. This was consistent with information provided by the CI. Officers also found the $90.00 provided to the CI for the second controlled buy under Plaintiff's mattress. Plaintiff asserts the $90.00 was given to her by her nephew as rent. Plaintiff was not arrested following the execution of the search warrant.

The case was presented to a grand jury on July 15, 2010. Officers Kinnison and Morrison testified at the Grand Jury. Laura Southerd, one of the clerks at the Water Department, and Plaintiff also testified. At the grand jury hearing, deputy district attorney Kirk Chavez did not ask Defendant about the presence of the girlfriend or other third-parties, and the presence of the girlfriend was not disclosed by Defendant. Defendant testified that informants and their vehicles are searched prior to controlled buys.

Plaintiff testified before the Grand Jury and denied being involved in selling drugs or paying her water bill with money used to buy drugs. The Grand Jury returned a true bill finding

probable cause on two counts of trafficking a controlled substance. Defendant prepared an affidavit for an arrest warrant the next day.

Defendant disclosed the presence of the unsearched girlfriend at the controlled buys to DA Chavez, prior to an interview with Chavez and Plaintiff's defense counsel on March 9, 2011. DA Chavez believed that the omission was material, and speculated that it was intentional.[3] Nevertheless, the District Attorney's Office did not dismiss the charges. In continuing the prosecution, the District Attorney took the position that the presence of the third-party was not disclosed in an effort to protect the CI's identity. At some point, there was apparently a suppression hearing. The ruling on the suppression of evidence is not in the record. The criminal charges were eventually dismissed on May 16, 2013.

Although not included in the parties' undisputed facts, the Court incorporates the arrest warrant affidavit drafted by the Defendant and included in the summary judgment record **(Doc. 51-2)**.

## DISCUSSION

### I. Defendant is Entitled to Absolute Immunity for his Grand Jury Testimony.

Defendant argues that he is entitled to absolute immunity for his testimony at the grand jury hearing. Plaintiff asserts that Defendant is liable for omissions in his testimony at the grand jury, because he did not affirmatively testify about the presence of an unsearched third party at the controlled buys.

---

[3] The Court did not include Plaintiff's Additional Facts T through BB, as they were either not supported in the record, mischaracterized the record, or were inadmissible speculation. *Chavez-Torres v. City of Greeley*, 660 F. App'x 627, 630 (10th Cir. 2016) ("[E]vidence "must be based on more than mere speculation, conjecture, or surmise[, and u]nsubstantiated allegations carry no probative weight in summary judgment proceedings.") (quotation and citation omitted). DA Chavez speculated that based on Defendant's demeanor and his statement that he "fucked up" that Defendant was admitting to being untruthful about the failure to search the girlfriend. Chavez also speculated that Defendant was "deflated" because he had deliberately mislead the grand jury and the judge.

Generally, witnesses enjoy absolute immunity from civil liability under § 1983 for their testimony. *Hunt v. Bennett,* 17 F.3d 1263, 1268 (10th Cir. 2003) (citing *Briscoe v. LaHue,* 460 U.S. 325, 345 (1983) ("immunity of parties and witnesses from subsequent damages liability for their testimony in judicial proceedings was well established in English common law"). However, only qualified immunity extends to officers who "set the wheels of government in motion by instigating a legal action" or "falsify affidavits" or "fabricate evidence concerning an unsolved crime." *Rehberg v. Paulk*, 566 U.S. 356, 370-71 (2012)

Plaintiff argues that Defendant is not entitled to absolute immunity for his testimony at the grand jury, because he was a "complaining witness." Here, there is little to no evidence that Defendant was a "complaining witness." *See Rehberg*, 566 U.S. at 371. There is nothing in the record that Defendant initiated the prosecution, made the decision to press charges, or filed a criminal complaint. Defendant did draft and sign an affidavit for the arrest warrant, but it was signed *after* the grand jury indicted the Plaintiff. However, the Court need not decide whether Defendant is a complaining witness.

Even if Defendant were a "complaining witness," he cannot be held liable for grand jury testimony. *Rehberg*, 566 U.S. at 371 ("It is clear—and petitioner does not contend otherwise—that a complaining witness cannot be held liable for perjurious *trial* testimony. And there is no more reason why a complaining witness should be subject to liability for testimony before a grand jury."). Therefore, the Court concludes that Plaintiff is absolutely immune for omissions in his grand jury testimony. *See, e.g.*, *Royse v. Wilbers*, 669 F. App'x 296, 297 (6th Cir. 2016) (dismissing complaint on grounds of absolute immunity where claim against defendant was based solely on grand jury testimony); *Sanchez v. Hartley*, 810 F.3d 750, 755 (10th Cir. 2016) (noting that officer is absolutely immune for testimony before grand jury pursuant to *Rehberg*).

Thus, in analyzing below whether Plaintiff has a valid claim under § 1983, the Court will not consider Defendant's grand jury testimony, but will consider any actions that are independent of his grand jury testimony. *See Coggins v. Buonora*, 776 F.3d 108, 113 (2d Cir. 2015); *King v. Harwood*, 852 F.3d 568, 586 (6th Cir. 2017), *cert. denied*, 138 S. Ct. 640 (2018) ("*Rehberg* most certainly applies to our case and affords Harwood absolute immunity from suit to *the extent that King's claims are based on his grand-jury testimony*, but *Rehberg* does not afford Harwood absolute immunity for his actions that are prior to, and independent of, his grand-jury testimony."). For example, only qualified immunity extends to the acts of instigating a legal action or falsifying affidavits. *Miller v. Maddox*, 866 F.3d 386, 395 (6th Cir. 2017).

## II. Defendant is Entitled to Qualified Immunity.

Plaintiff alleges that Defendant violated her Fourth Amendment rights by (1) omitting information from the affidavit for the arrest warrant, and (2) initiating or causing to be initiated legal proceedings against her.

As to Count II, the unreasonable seizure claim, Plaintiff alleges that the initiation of legal process against her violated her Fourth Amendment rights.[4] Under these circumstances, the malicious prosecution and unreasonable seizure claims as pled are substantially similar, and will be analyzed together. *Becker v. Kroll*, 494 F.3d 904, 914 (10th Cir. 2007) ("at least prior to trial, the relevant constitutional underpinning for a claim of malicious prosecution under § 1983 must be the Fourth Amendment's right to be free from unreasonable seizures."); *Myers v. Koopman*, 738 F.3d 1190, 1194 (10th Cir. 2013) ("Unreasonable seizures imposed with legal process precipitate Fourth Amendment malicious-prosecution claims."); *Taylor v. Meacham*, 82 F.3d

---

[4] Plaintiff did not specify the constitutional basis of her malicious prosecution claim. However, because the state court case never went to trial, "the Fourth Amendment is the proper constitutional basis for any such wrongful prosecution claim", not the Fourteenth Amendment. *Garcia v. Escalante*, 678 F. App'x 649, 652 n. 5 (10th Cir. 2017), *citing Becker v. Kroll*, 494 F.3d 904, 924 (10th Cir. 2007). Therefore, the Court assumes that the basis of the malicious prosecution claim, like her unreasonable seizure claim, is the Fourth Amendment.

1556,1561 (10th Cir. 1996) ("Following Albright, in the § 1983 malicious prosecution context, that constitutional right is the Fourth Amendment's right to be free from unreasonable seizures."); *Margheim v. Buljko*, 855 F.3d 1077, 1085 (10th Cir. 2017); *Sanchez v. Hartley*, 810 F.3d 750, 755 (10th Cir. 2016) (recognizing a cause of action under § 1983 for malicious prosecution based on the Fourth Amendment.).

As explained below, Plaintiff has not satisfied (or properly addressed) either prong of qualified immunity. She has therefore failed to satisfy her heavy burden to resist summary judgment.

A.     There was No Constitutional Violation.

To satisfy the first prong of the qualified immunity analysis, Plaintiff bears the burden of proving the following elements of a Fourth Amendment malicious prosecution claim:

> (1) the defendant caused the plaintiff's continued confinement or prosecution;
> (2) the original action terminated in favor of the plaintiff;
> (3) no probable cause supported the original arrest, continued confinement, or prosecution;
> (4) the defendant acted with malice; and
> (5) the plaintiff sustained damages.

*Margheim v. Buljko*, 855 F.3d 1077, 1085 (10th Cir. 2017). Defendant argues that Plaintiff is unable to prove the third (probable cause) and fourth (malice) elements. The Court will therefore limit its analysis under the first prong of qualified immunity to those elements. *See Evers v. Regents of Univ. of Colo.,* 509 F.3d 1304, 1309-10 (10th Cir.2007).

B.     Third Element: Probable Cause Existed to Arrest Plaintiff.

1.     Arrest Affidavit.     Plaintiff argues that if Defendant had disclosed the presence of the unsearched third party at the controlled buy in the arrest affidavit, the arrest warrant would lack probable cause. The Court disagrees.

"Affiants seeking arrest warrants violate the Fourth Amendment when they knowingly, or with reckless disregard for the truth, include false statements in an affidavit, or knowingly or recklessly omit from it information which, if included, would vitiate probable cause." *Puller v. Baca*, 781 F.3d 1190, 1197 (10th Cir. 2015); *Wolford v. Lasater*, 78 F.3d 484, 489 (10th Cir. 1996). Probable cause is measured by including any omitted material information and determining whether the affidavit, along with the omitted information, establishes probable cause for the warrant. *Id., cited in Jackson v. Hogan*, 672 F. App'x 870, 874 (10th Cir. 2016), *reh'g denied* (Jan. 24, 2017), *cert. denied*, 138 S. Ct. 205, 199 L. Ed. 2d 135 (2017); *Wolford v. Lasater*, 78 F.3d 484, 489 (10th Cir. 1996).

"Probable cause for an arrest warrant is established by demonstrating a substantial probability that a crime has been committed and that a specific individual committed the crime." *Wolford v. Lasater,* 78 F.3d 484, 489 (10th Cir.1996), *quoted in Wilkins v. DeReyes*, 528 F.3d 790, 801 (10th Cir. 2008). Probable cause does not require proof beyond a reasonable doubt or proof that the suspect's guilt is more likely true than false. *Kerns v. Bader*, 663 F.3d 1173, 1188 (10th Cir. 2011) (citation and quotation omitted). However, it requires "more than a bare suspicion." *Id.*

NMSA § 30-31-20(a) provides that "it is unlawful for a person to intentionally traffic." § 30-31-20(B). "Traffic" includes the distribution, sale, barter or giving away of, or possession with intent to distribute, a controlled substance enumerated in Schedule I or II that is a narcotic drug. § 30-31-20(A)(2), (3)

In determining whether there was probable cause, the Court looks to the allegations in the affidavit for arrest warrant. *Margheim v. Buljko*, 855 F.3d 1077, 1085 (10th Cir. 2017), *citing Wilkins v. DeReyes*, 528 F.3d 790, 798 (10th Cir. 2008) ("If arrested pursuant to a warrant,

plaintiff can challenge the probable cause determination supporting the warrant's issuance."). In determining whether there was probable cause to commit a state law crime, the Court looks to state law. *A.M. v. Holmes*, 830 F.3d 1123, 1140 (10th Cir. 2016), *citing Kaufman v. Higgs*, 697 F.3d 1297, 1300-01 (10th Cir. 2012). Under the *Aguilar-Spinelli* test used in New Mexico, "[t]o support a finding of probable cause the affidavit must establish (1) the informant's basis of knowledge, and (2) facts showing the informant's veracity." *State v. Bonner*, 2012 WL 2889947, at *3 (N.M. Ct. App. June 18, 2012) (citation omitted). The veracity or reliability of an informant may be established, *inter alia*, by independent investigation by officers corroborating the informant's reliability or information. *Id.* at *4.

In the arrest warrant affidavit **(Doc. 51-2)**, Defendant swore as follows. The CI told officers that Plaintiff would be selling Oxycodone once her son filled his prescription at the end of the month. Plaintiff told the CI that half of the 200 pills would be for sale. The CI later learned that Plaintiff's son would be filling the prescription on May 28, 2010. The CI set up a buy with Plaintiff. Pre-buy, Defendant searched the CI and the CI's car. Afterward, Defendant observed Plaintiff drive up to the buy location. Plaintiff was sitting in the front passenger seat, and her son was driving. The CI entered Plaintiff's vehicle and exited a short item later. The CI walked to an adjacent alleyway, where he met with the CI and the Defendant recovered four oxycodone pills. The CI stated he received the pills directly from Plaintiff. According to the CI, Plaintiff was then heading to the Water Department to pay her water bill.

Plaintiff drove to the water station with her son. Plaintiff stayed in the car, while her son went in to pay. The marked bills from the first controlled buy were used to pay the amount due on her account. A clerk identified her son as the one paying the account. Although the officers did not witness the transaction, they saw Plaintiff's car leaving the parking lot.

A second controlled buy was performed. The CI and the vehicle were searched. The CI drove to Plaintiff's residence; the Officers observed. The CI entered the residence, staying only a short time. Post-buy, Defendant recovered nine oxycodone pills from the CI. The CI stated he received the pills in a "hand-to-hand" transaction with Plaintiff.

Defendant executed a search warrant on Plaintiff's residence. Officers found $90 in marked bills from the second controlled buy under her bed. Officers also found a receipt for 200 pills of Oxycodone, filled on May 28, 2010, in Plaintiff's bedroom. Oxycodone pills were found in Plaintiff's son's pocket. The affidavit did not discuss the credibility and reliability of the confidential informant.

2. <u>Analysis</u>. Plaintiff argues that the presence of an unsearched third party destroys the validity of the controlled buy, and therefore the arrest warrant lacked probable cause. The Court disagrees. Initially, the Court notes that Plaintiff failed to carry her heavy burden of proving a constitutional violation, because she failed to cite to any cases supporting her argument that Defendant lacked probable cause to arrest her because of the presence of the unsearched third party at the controlled buy. *See Gutierrez v. Cobos*, 841 F.3d 895, 902 (10th Cir. 2016) ("[T]he lack of legal authority indicates a failure to show the constitutional violation element…").

Neither party presented New Mexico case law discussing probable cause, or the effect on the probable cause analysis of an unsearched third party at a controlled buy. Tenth Circuit case law indicates that an unsearched third party may introduce uncertainty into a controlled buy, but it does not *per se* "vitiate" a controlled buy. *United States v. Artez*, 389 F.3d 1106, 1112–13 (10th Cir. 2004). The Tenth Circuit has found probable cause in a number of circumstances where officers did not search a third party at a controlled buy. *Id.* (probable cause found that

defendant trafficked, even where there was a third party intermediary); *United States v. Richardson*, 86 F.3d 1537, 1545 (10th Cir. 1996) (same); *United States v. Aranda-Diaz*, 623 F. App'x 912, 915 (10th Cir. 2015) (probable cause found even though unsearched third party was an intermediary between CI and defendant). *See also United States v. Washington*, 11 F.3d 1510, 1515 (10th Cir. 1993) (there was sufficient evidence to convict even though informant had opportunities after each buy to get drugs elsewhere), *and United States v. Sidwell*, 440 F.3d 865, 869 (7th Cir. 2006).

Even when considering the presence of the unsearched girlfriend at the controlled buy, the affidavit contains sufficient facts to support probable cause for arrest. The presence of the girlfriend tends to create uncertainty as to whether the pills given to the officers came from the Plaintiff, or from the girlfriend. However, the presence of the girlfriend does not change the following: (1) the money from the first controlled buy was used to pay Plaintiff's water bill, (2) the prescription was filled on May 28, 2010, and the packaging for the prescription and the pills were found in Plaintiff's bedroom, (3) the pills were found in the house, and (4) the money used in the second controlled buy was found under Plaintiff's mattress. The officers observed the controlled buys, and observed the CI enter a car occupied by both Plaintiff and her son. This evidence in the affidavit independently corroborates the confidential informant's statements that the Plaintiff sold drugs to him, and indicates drugs were not merely given to him by his girlfriend. Viewing the affidavit with the omitted information, there was a substantial probability that Plaintiff was trafficking Oxycodone. *See State v. Hunt*, 2016 WL 3415505, at *4 (N.M. Ct. App. 2016) ("The CI's established credibility and the detective's indirect observation of the pre-arranged controlled buy…sufficiently established that the officers had good reason to believe the occupants of the red vehicle, including Defendant, engaged in the pre-arranged sale

of heroin to the CI….”); *see also United States v. Sidwell*, 440 F.3d 865, 869 (7th Cir. 2006) (although theoretically possible that drugs could have come from elsewhere, “probable cause requires only a probability or substance chance the evidence may be found; it does not, by contrast, require absolute certainty.”).

These facts satisfy New Mexico’s *Aguilar-Spinelli* test. Although the affidavit failed to discuss the reliability of the informant, the CI’s reliability was established through observations by the officers, and the evidence found at the Water Department and at the home corroborates the CI’s statements. *See State v. Mendez*, 2018 WL 897923, at *1 (N.M. Ct. App. 2018), *citing State v. Lujan*, 953 P.2d 29 (N.M. Ct. App. 1998). Furthermore, the facts in the affidavit were based on first-hand knowledge of the CI during the controlled buys and the Defendant in observation of the controlled buys. *State v. Lujan*, 953 P.2d 29, 31–32 (N.M. Ct. App. 1998) (first-hand knowledge of informant at controlled buy satisfies knowledge prong), *citing State v. Barker*, 844 P.2d 839, 841 (N.M. Ct. App. 1992) (same).

Other alleged omissions also do not change the above analysis. Plaintiff argues that the affidavit also omitted that the CI was paid for his work. However, this does not destroy the CI’s credibility. *State v. Bonner*, 2012 WL 2889947, at *5 (N.M. Ct. App. June 18, 2012), *citing State v. Dietrich*, 204 P.3d 748 (N.M. Ct. App. 2009). Plaintiff also asserts that the affidavit misstates who paid Plaintiff’s water bill at the City of Portales Water Department. However, the affidavit was clear that the money used to pay Plaintiff’s water bill was provided to the water clerk by Plaintiff’s son, while Plaintiff was sitting in the car.

3. <u>Probable Cause to Initiate Proceeding</u>.

Plaintiff argues that Defendant is not only liable for omitting information from the affidavit, but also for initiating legal process against Plaintiff. Initially, the Court notes that there

is no evidence that Defendant initiated legal process against Plaintiff, filed a criminal complaint, or persuaded the district attorney to press charges. *See Pierce v. Gilchrist*, 359 F.3d 1279, 1292 (10th Cir. 2004) (A Fourth Amendment claim may arise where an officer conceals material facts from a district attorney); *McCarty v. Gilchrist*, 646 F.3d 1281, 1287 (10th Cir. 2011) (Probable cause must be evaluated as of the events in question.).

Under these circumstances, the Tenth Circuit has previously looked beyond the arrest affidavit to determine probable cause. *See Goad v. Town of Meeker*, 654 F. App'x 916, 923 (10th Cir. 2016) (looking beyond affidavit to determine whether there was probable cause to for the underlying prosecution), *citing Pitt v. District of Columbia*, 491 F.3d 494, 502 (D.C. Cir. 2007) ("The issue in a malicious prosecution case is not whether there was probable cause for the initial arrest, but whether there was probable cause for the underlying suit."); *but see Margheim v. Buljko*, 855 F.3d 1077, 1085 (10th Cir. 2017) (limiting analysis to whether arrest affidavit contained sufficient facts to support probable cause).

Even if the Court were required to look beyond the affidavit to determine if there was probable cause, the Court concludes that under all the circumstances known to Defendant, probable cause existed for the underlying suit. The CI's statement that Plaintiff was selling drugs was corroborated by another CI. Defendant knew that the CI was reliable and credible, based on the CI's prior work with the Region V Task Force. The CI's statements were corroborated by surveillance of Plaintiff and a subsequent search of Plaintiff's house.

Given the independent corroboration provided by surveillance of the informant, information about the CI's credibility, and the evidence found upon execution of the search warrant, the added information about the unsearched girlfriend present at the controlled buy would not change the outcome.

C.      <u>Fourth Element: Defendant did not act with Malice</u>.

Plaintiff bears the burden of putting forth evidence that the omission was intentional rather than out of negligence and inadvertence. *See Novitsky v. City Of Aurora*, 491 F.3d 1244, 1258–59 (10th Cir. 2007), *cited in Chavez-Torres v. City of Greeley*, 660 F. App'x 627, 629 (10th Cir. 2016). Under these circumstances, "to survive qualified immunity, a plaintiff must make a substantial showing of deliberate falsehood." *Harte v. Bd. of Commissioners of Cty. of Johnson, Kansas*, 864 F.3d 1154, 1199–200 (10th Cir. 2017), *quoting Snell v. Tunnell*, 920 F.2d 673, 698 (10th Cir. 1990); *see also Stonecipher v. Valles*, 759 F.3d 1134, 1142 (10th Cir. 2014) ("The burden is on the plaintiff to make a substantial showing of deliberate falsehood or reckless disregard for truth by the officer seeking the warrant.") (quotation omitted). *See also Cardoso v. Calbone*, 490 F.3d 1194, 1197 (10th Cir. 2007) (internal quotation marks omitted) (Plaintiff "must go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of an element essential to [her] case in order to survive summary judgment."), *quoted in Chavez-Torres v. City of Greeley*, 660 F. App'x 627, 629 (10th Cir. 2016).

Plaintiff argues that Defendant told DA Chavez that he had been untruthful, and that he knew when he wrote the affidavit that he was omitting information. To support this statement, Plaintiff cites to deposition testimony from DA Chavez. However, Plaintiff mischaracterizes the record evidence. Defendant never admitted to being untruthful, or deliberately and knowingly omitting information from the affidavit. Chavez speculated that the Defendant may have been untruthful, based on Defendant's demeanor when he told Chavez about the omission. As noted above, speculation in deposition testimony carries no probative weight in summary judgment proceedings. *See Cardoso v. Calbone*, 490 F.3d 1194, 1197 (10th Cir. 2007), *quoting Self v. Crum,* 439 F.3d 1227, 1230 (10th Cir.) ("[E]vidence, including testimony, must be based on

more than mere speculation, conjecture, or surmise. Unsubstantiated allegations carry no probative weight in summary judgment proceedings."). Plaintiff does not provide evidence showing a motive for lying, or any other circumstances that would indicate his omission was deliberate or knowing rather than inadvertent. *Puller v. Baca*, 781 F.3d 1190, 1197–98 (10th Cir. 2015) (plaintiff failed to provide evidence that defendant intentionally or recklessly omitted information from arrest affidavit). Solely based merely on this speculative testimony, a reasonable jury could not conclude that there was malice.

The failure to search the third party at the controlled buy was at most negligence or inadvertence. Based on the record, it does not appear that he was ever asked about the third party being present. Instead, Defendant candidly admitted to DA Chavez that he omitted from his testimony and affidavit that he failed to search the third party at the controlled buy. *See, e.g., Novitsky*, 491 F.3d at 1258-59. These circumstances indicate that Defendant did not knowingly or deliberately omit this information. *Id.*

## II.     Law was Not Clearly Established.

Even if Plaintiff were able to show that Defendant violated her constitutional rights, the Court concludes that Plaintiff failed to satisfy her heavy burden at summary judgment to show that such rights were clearly established.

### A.     Standards for Clearly Established Law.

"The law is clearly established if there is a Supreme Court or Tenth Circuit decision, or the weight of authority from other courts, that has found the law to be as the plaintiff maintains." *Gadd v. Campbell*, 2017 WL 4857429, at *4 (10th Cir. 2017). "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, —— U.S. ——, 136 S.Ct. 305, 308, 193 L.Ed.2d 255

(2015) (per curiam) (internal quotation marks omitted). "Clearly established law should not be defined at a high level of generality." *White v. Pauly*, ––– U.S. ––––, 137 S.Ct. 548, 552, 196 L.Ed.2d 463 (2017) (internal quotation marks omitted). Instead, "the clearly established law must be 'particularized' to the facts of the case." *Id.*

To determine whether an officer violated clearly established law, the Court looks to whether there was "arguable probable cause" for an arrest. *Garcia v. Escalante*, 678 F. App'x 649, 655 (10th Cir. 2017). Arguable probable cause exists where "a reasonable police officer in the same circumstances . . . and possessing the same knowledge as the officer in question *could* have reasonably believed that probable cause existed in light of well-established law." *Felders ex rel. Smedley v. Malcom*, 755 F.3d 870, 879 (10th Cir. 2014). "Arguable probable cause is another way of saying that the officers' conclusions rest on an objectively reasonable, even if mistaken, belief that probable cause exists." *Stonecipher v. Valles*, 759 F.3d 1134, 1141 (10th Cir. 2014). Because qualified immunity is intended to protect "all but the plainly incompetent or those who knowingly violate the law," summary judgment on the basis of qualified immunity is appropriate "[i]f the law did not put the officer on notice that his conduct would be clearly unlawful." *Saucier v. Katz*, 533 U.S. 194, 202 (2001) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

Generally, it violates clearly established law to knowingly or recklessly omit material information from an arrest warrant that*, if included, would have vitiated probable cause*. *C.M. v. Urbina*, 640 F. App'x 825, 833 (10th Cir. 2016). Thus, where information is omitted from an affidavit, the Court must still inquires whether there was arguable probable cause for an arrest. *Jackson v. Hogan*, 672 F. App'x 870, 874 (10th Cir. 2016); *Stonecipher v. Valles*, 759 F.3d 1134, 1142 (10th Cir. 2014) (in case of information omitted from affidavit, court must still determine

19

whether "as a matter of law whether a reasonable officer would have found probable cause under the circumstances.").

B.     <u>Statement of Clearly Established Law</u>.

Defendant argues that the law is not clearly established that the failure to perform a hands-on search of a female companion of a confidential informant and the subsequent failure to disclose the presence of the third party would violate the Constitution.

Initially, the Court notes that Plaintiff did not address the clearly established prong of qualified immunity, or cite to any case law that demonstrates that Defendant lacked probable cause to arrest Plaintiff. Plaintiff has also not cited to any case law that clearly establishes that an unsearched third party present at a controlled buy necessarily "washes away everything" and vitiates probable cause. Therefore, the Court concludes that Plaintiff did not carry her burden under the second prong of qualified immunity. *Gutierrez v. Cobos*, 841 F.3d 895, 907 (10th Cir. 2016) (plaintiff failed to meet burden where they did not cite to legal authority for clearly established law or use term "clearly established"); *citing Thomas v. Durastanti*, 607 F.3d 655, 669 (10th Cir. 2010) ("The plaintiff bears the burden of citing to us what he thinks constitutes clearly established law."); *see also Rojas v. Anderson*, 727 F.3d 1000, 1004 (10th Cir. 2013) (same); *Smith v. McCord*, 707 F.3d 1161, 1162 (10th Cir. 2013); *Hedger v. Kramer,* 2018 WL 1082983, at *5 (10th Cir. 2018) ("The failure to identify [] a case is fatal to the claim.").

Alternatively, the weight of authority cited in Section II(B)(2) of this opinion indicates that an officer in Defendant's position *could* have reasonably believed that probable cause existed in light of well-established law, despite the presence of the CI's unsearched girlfriend at the controlled buy.

**CONCLUSION**

Plaintiff has not met her burden of establishing a constitutional violation or that the right at issue was clearly established. Therefore, Defendant's Motion for Summary Judgment is **GRANTED**. Defendant is entitled to qualified immunity on the Malicious Prosecution (Count I) and Unreasonable Seizure (Count II) claims.

**IT IS SO ORDERED**.

_____
CHIEF UNITED STATES DISTRICT JUDGE